# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ROSEMARY KEITH, as Personal Representative of the Estate of Dwight Hammonds,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | Civil Action Number **5:17-cv-01437-AKK** |
| **vs.** | ) ) | |
| **RUTH NAGLICH, ET AL.,** | ) ) ) | |
| **Defendants.** | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Rosemary Keith brings this lawsuit via 42 U.S.C. § 1983 on behalf of her deceased son, Dwight Hammonds, alleging that the Defendants, individuals employed by the Alabama Department of Corrections (ADOC) and by MHM Correctional Services, Inc. (MHM), a private contractor used by the ADOC to provide mental health care to prisoners, violated her son's rights under the Eighth and Fourteenth Amendment.  Ms. Keith also brings a parasitic state law claim under Alabama's wrongful death statute, ALA. CODE § 6-5-410.  The Defendants have now filed two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, docs. 7 and 17, primarily arguing that the complaint fails to plausibly allege the existence of a constitutional violation.  After carefully

1

reviewing the parties' briefs, docs. 7; 9; and 17,[1] and the complaint, doc. 1, the court finds that the Defendants' motions are due to be granted.

## I.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to comply with Rule 8(a)(2) or does not otherwise state a claim upon which relief can be granted. When evaluating a motion under Rule 12(b)(6),

---

[1] The court notes that Ms. Keith filed a response to the ADOC Defendants' motion, doc. 17, on January 16, 2017. This filing comes over a month late, *see* doc. 18, and Ms. Keith did not seek leave of court to file an out-of-time brief. This court sets deadlines, in part, to ensure that it is able to "maintain control over its docket . . . [a] power [that] is necessary for the court to administer effective justice and prevent congestion." *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006) (explaining that courts have "both the authority to establish deadlines and the discretion to enforce them"). Accordingly, the court *sua sponte* **STRIKES** Mrs. Keith's response brief, doc. 19, as untimely.

the court accepts "the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the plausibility standard does not impose a "probability requirement," the allegations in a plaintiff's complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (emphasizing that the "[f]actual allegations [included in the complaint] must be enough to raise a right to relief above the speculative level"). Ultimately, the line between possibility and plausibility is a thin one, and making this determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.  FACTS

Dwight Hammonds was a troubled young man with an extensive history of mental health problems including: (1) "a history of outpatient mental health treatment;" (2) at least one period of inpatient treatment following a suicide

attempt; and (3) several experiences involving repetitive suicidal ideation.  Doc. 1 at 5.  In 2001, Mr. Hammonds was sentenced to forty years in prison and, as part of the ADOC prisoner intake process, underwent a psychiatric evaluation which showed he was suffering from "a serious mental illness."  *Id.* at 5–6.  The examining psychiatrist recommended that the ADOC provide Mr. Hammonds with medication and refer him to a counselor for further treatment.  *Id.* at 6.  While in prison, Mr. Hammonds was diagnosed with post-traumatic stress disorder, and, at least as of May 2005, his medical records indicate that he still suffered from a serious mental illness.  *Id.*

In 2006, however, the ADOC adopted a new coding system for monitoring the mental health of prisoners.  *Id.*  In April 2008, pursuant to the new mental health criteria, Mr. Hammonds received a classification of MH-0 indicating that he had "no need for mental-health care."  *Id.*  While the ADOC did briefly assign a mental health code of MH-1 to Mr. Hammonds, a classification showing a mild psychological impairment, he was soon returned to his prior MH-0 classification.  *Id.* at 6–7.  The complaint does not allege that Mr. Hammonds experienced any other mental health issues until 2015 when he was placed on suicide watch for an unspecified period of time.  *Id.* at 7, 13.  Shortly after Mr. Hammonds' release from suicide watch, prison officials assigned him to administrative segregation after an incident involving a confrontation with guards in his dormitory.  *Id.* at 7.

Mr. Hammonds did not receive mental health treatment or counseling before being placed in isolation, *id.*, and roughly a day later he committed suicide in his segregation cell.  *Id.* at 8.  His death occurred approximately ten days after the ADOC released him from suicide watch.  *Id.* at 13.

## III.  ARGUMENT

The four individual Defendants in this case have filed two separate motions to dismiss.  Docs. 7 and 17.  The two Defendants employed by MHM, Dr. Robert Hunter and Nakeetsha Dryer (collectively the MHM Defendants), argue that Ms. Keith's complaint is a "shotgun pleading" subject to summary dismissal, and that, in any event, the complaint fails to plausibly allege that they violated Mr. Hammonds' constitutional rights.  The other two Defendants, Christopher Gordy and Ruth Naglich (collectively the ADOC Defendants), are employed by the ADOC and raise a largely duplicative argument claiming qualified immunity on the basis that Ms. Keith has failed to plausibly allege a violation of her son's constitutional rights.  The court will address each motion separately.

### A.    The MHM Defendants Motion to Dismiss

*1. Ms. Keith's Complaint is not a Shotgun Pleading*

The MHM Defendants' primary argument for dismissal is that Ms. Keith's complaint is a quintessential "shotgun pleading."  A shotgun pleading is typically defined as "a complaint containing multiple counts where each count adopts the

allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). These types of pleadings are generally flawed because they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. However, dismissal based on this failing requires a complaint so deficient that "'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* at 1326 (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

While Ms. Keith's complaint is not as clear as it might be, it does include specific factual allegations supporting each of her claims and providing enough substance to enable the MHM Defendants to "'discern what [Ms. Keith] is claiming and [to] frame a responsive pleading.'" *Id.* (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). Indeed, the MHM Defendants' motion to dismiss accurately identifies the basis for the various claims Ms. Keith asserts against them. *See* Doc. 7 at 3. Moreover, the complaint specifically identifies each of the claims it asserts along with particularized supporting facts. This is simply not a situation where the complaint "'presents scores of allegations regardless of their relevance and incorporates them

in their entirety into several counts asserting discrete claims for relief.'" *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) (*GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1368 (11th Cir. 1998)).  Nor does the fact that a single claim is asserted against multiple defendants "render the complaint [fatally] deficient." *Id.* Where, as here, a complaint consists of identifiable claims brought against specific defendants and supported by particularized facts, the court declines to classify it as a shotgun pleading subject to summary dismissal.

2. *The Complaint Fails to Plausibly Allege that the MHM Defendants Violated Mr. Hammonds' Constitutional Rights*

The MHM Defendants also aver that Ms. Keith failed to adequately allege that they violated the constitution. This is a prisoner suicide case brought via § 1983 alleging the violation of Mr. Hammonds' constitutional rights secured via the Eighth and Fourteenth Amendments.  It is by now well established that the Eighth Amendment's prohibition on cruel and unusual punishment also proscribes deliberate indifference to a prisoner's serious medical needs.  *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).[2]  In this circuit, an inmate at risk of committing suicide is considered to have a serious medical need and accordingly suicide cases are analyzed analogously to cases involving a jailer's failure to provide needed

---

[2] The Eighth Amendment is applicable to the states through the Fourteenth Amendment, *see Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981), and this is presumably why Ms. Keith has also asserted an alleged violation of the Fourteenth Amendment.

medical care. *See Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990).

An Eighth Amendment claim asserted against an individual requires proof of both "subjective and objective elements." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). In a case like this one, where the Eighth Amendment violation turns on a failure to prevent harm, "the inmate must show that [she] is incarcerated under conditions posing a substantial risk of serious harm." *Id.* With respect to the subjective requirement, the "prison official must have a 'sufficiently culpable state of mind,'" i.e. the prison official must be deliberately indifferent "to inmate health or safety." *Id.* (citation omitted). In other words, to prevail on her Eighth Amendment claim "'[Ms. Keith] must show that the jail official displayed *deliberate indifference* to [Mr. Hammonds'] taking of his own life.'" *Jackson v. West*, 787 F.3d 1345, 1353 (11th Cir. 2015) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1274–75 (11th Cir. 1989)). Deliberate indifference requires "'(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" *Id.* (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

In the context of prison suicide, this standard requires the defendant to "deliberately disregard 'a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.'" *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003)). Critically, such a finding "requires that officials have notice of the suicidal tendency of *the* individual whose rights are at issue." *Tittle v. Jefferson Cty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994). The key question then is not whether the defendant was indifferent "to suicidal inmates or suicide indicators generally, but rather it 'is a question of whether a defendant was deliberately indifferent to *an individual's* mental condition and the likely consequences of that condition.'" *Cook*, 402 F.3d at 1117 (quoting *Tittle*, 10 F.3d at 1539). "Proof of deliberate indifference requires a great deal more than does proof of negligence . . . 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) (quoting *Purcell ex rel. Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313, 1319–20 (11th Cir. 2005)). Thus, a deliberate indifference claim, in the context of prison suicide, depends specifically on "the level of knowledge possessed by the officials involved, or that which should have been known as to an inmate's suicidal tendencies." *Popham*, 908 F.2d at 1564.

In this regard, the complaint articulates two primary theories of liability against the MHM Defendants: (1) that they took Mr. Hammonds off of the ADOC's mental health caseload despite his serious mental illness depriving him of necessary treatment; and (2) that they improperly discharged Mr. Hammonds from suicide watch and failed to adequately follow-up with him even after he was placed in administrative segregation. Doc. 1 at 3–5, 14–16. The court can easily dispose of Ms. Keith's first theory because, as mentioned, a finding of deliberate indifference requires a prison official to disregard "*a strong likelihood* rather than a mere possibility that the self-infliction of harm will occur." *Cook*, 402 F.3d at 1115 (quotation omitted). Here, the MHM Defendants allegedly removed Mr. Hammonds from the mental health caseload sometime around 2008, roughly six years after he initially began receiving treatment from the ADOC. Doc. 1 at 5–6. During this six year period, there are no allegations that Mr. Hammonds ever threatened or attempted suicide. Nor does the complaint assert that the ADOC considered Mr. Hammonds a suicide risk prior to August 2015, almost eight years after he had stopped receiving mental health care. The Eleventh Circuit has explained "[n]o matter how defendants' actions might be viewed, the law in this circuit makes clear that they cannot be liable under § 1983 for the suicide of a prisoner who never had threatened or attempted suicide and who had never been considered a suicide risk." *Tittle*, 10 F.3d at 1540 (quotations omitted).

While the complaint does allege that Mr. Hammonds disclosed his earlier suicide attempts to ADOC officials, doc. 1 at 5, 13, these prior suicide attempts are simply too attenuated to indicate that Mr. Hammonds' removal from the mental health caseload over six years later created the "strong likelihood" of self-harm necessary to show deliberate indifference. And, the complaint is entirely bereft of specific allegations related to the decision to remove Mr. Hammonds from the mental health case load or, more broadly, to the inadequacy of the psychiatric treatment Mr. Hammonds received. Instead, the complaint contains myriad allegations bearing on systemic issues with the ADOC's procedures for classifying and treating mental ill inmates. *Id.* at 8–10. These allegations, as deeply troubling as they are, fail to demonstrate that Mr. Hammonds was personally exposed to a "strong likelihood" of self-harm based on his removal from the ADOC's mental health caseload. Furthermore, the Eleventh Circuit has made clear that the proper inquiry under these circumstances is whether a prison official was "deliberately indifferent *to an individual's* mental condition and the likely consequences of that condition." *Cook*, 402 F.3d at 1117 (quotation omitted). As such, none of the generalized factual allegations attacking the overall level of mental health care provided by the ADOC have any bearing on the adequacy of the medical decisions related to the removal of Mr. Hammonds from the mental health caseload in 2008.

Ms. Keith's second theory of liability predicated on the decision to release Mr. Hammonds from suicide watch and the failure to provide follow-up care afterwards presents a much thornier question. While it is clear that, by this time, Mr. Hammonds presented a strong likelihood of self-harm, the complaint lacks the necessary allegations to establish the MHM Defendants' subjective knowledge of that risk. *See Jackson*, 787 F.3d at 1353. The complaint does generally allege that the MHM Defendants had responsibility for providing care to Mr. Hammonds, doc. 1 at 3–4, but it fails to indicate that they were either personally involved in the provision of that care or had any knowledge of Mr. Hammonds' medical condition at all. Unfortunately for Ms. Keith, the case law in this area is clear: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Goodman*, 718 F.3d at 1332 (quotation omitted). The complaint simply does not provide the requisite facts to allow this court to infer that the MHM Defendants were aware that Mr. Hammonds was exposed to a substantial risk of serious harm when he was released from suicide watch or when he failed to receive any follow-up care before being placed in segregation.

Again, the complaint seeks to avoid the import of the lack of specific information linking the MHM Defendants to Mr. Hammonds' treatment by alleging that the MHM Defendants were aware of the purported systemic failures

of the ADOC to provide constitutionally adequate mental health care to prisoners. Doc. 1 at 8–10, 11–16. But these allegations do nothing to establish the subjective awareness of a risk of serious harm to Mr. Hammonds that is legally required to state a deliberate indifference claim against an individual. In short, the complaint provides no basis for the court to conclude that the MHM Defendants had actual "notice of the suicidal tendency of *the* individual whose rights are at issue [i.e. Mr. Hammond]." *Tittle*, 10 F.3d at 1539. Absent such notice, or at this stage, well-pleaded factual allegations allowing the court to draw the plausible inference of the existence of such notice on the part of the MHM Defendants, the court cannot say that Ms. Keith has adequately alleged the existence of a constitutional violation.[3] Therefore, because the complaint does not contain a single factual allegation bearing on the MHM Defendants' subjective knowledge of Mr. Hammonds' suicidal tendencies or of any other factor bearing on the treatment Mr. Hammonds received at Limestone, Ms. Keith's constitutional claims against the MHM Defendants are due to be dismissed.[4]

---

[3] The complaint does contain allegations regarding the MHM Defendants' subjective awareness of the risks Mr. Hammonds was allegedly exposed to during his incarceration. *See* Doc. 1 at 13. However, the repeated allegations that the MHM Defendants "were deliberately indifferent," *id.*, or that they "subjectively knew of, and disregarded, the risk," *id.*, are mere legal conclusions and not entitled to an assumption of truth. *See Franklin v. Curry*, 738 F.3d 1246, 738 F.3d 1246, 1251 (11th Cir. 2013) (explaining that these types of statements are "conclusory legal allegations" that "carry no weight").

[4] Ms. Keith also filed claims against fictitious MHM employees. However, consistent with the general rule that fictitious party practice is not allowed in federal court, *see Richardson v.*

### 3. The Court Declines to Exercise Supplemental Jurisdiction Over Ms. Keith's State Law Claims

The complaint also alleges a state law claim for wrongful death under ALA. CODE § 6-5-410 against the MHM Defendants.  There is no question that when a constitutional violation "actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute."  *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1047 (11th Cir. 2011).  However, as discussed above, Ms. Keith's complaint has failed to adequately allege a constitutional violation.  Accordingly, her attempt to bring that claim via the Alabama wrongful death statute fails for the same reasons outlined previously.

In the alternative, Ms. Keith asserts a state law negligence claim for wrongful death against the MHM Defendants.  However, in light of this court's decision to dismiss Ms. Keith's § 1983 claims against both sets of Defendants in this case, only her state law negligence claims remain in the action.   As a general matter, "[i]n any civil action of which the district courts have original jurisdiction, [they also] have supplemental jurisdiction over all other claims . . . [forming] part of the same case or controversy under Article III of the United States Constitution."   28 U.S.C. §1367(a).   However, after "the district court has dismissed all claims over which it has original jurisdiction," it may decline to

*Johnson*, 598 F.3d 734, 738 (11th Cir. 2010), the claims against these unnamed defendants are also dismissed without prejudice.

exercise supplemental jurisdiction over any remaining claims. 28 U.S.C. § 1367(c)(3). Therefore, because the resolution of Ms. Keith's remaining claims depends exclusively on questions of state law, and the Eleventh Circuit has instructed that "[s]tate courts, not federal courts, should be the final arbiters of state law," *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997), the court dismisses Ms. Keith's negligence claim brought pursuant to ALA. CODE § 6-5-410 without prejudice. *See Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) (explaining if state-law claims are dismissed on jurisdictional grounds "they should be dismissed without prejudice so that the claims may be refiled in the appropriate state court").

## B. THE ADOC DEFENDANT'S MOTION TO DISMISS[5]

### 1. The ADOC Defendants are Entitled to Qualified Immunity

The ADOC Defendants primarily rely on the doctrine of qualified immunity in support of their motion. Qualified immunity reflects both "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Accordingly, "government officials performing discretionary functions are

---

[5] The primary thrust of the ADOC Defendants' qualified immunity argument is that Ms. Keith has failed to plausibly allege a constitutional violation against them in their individual capacities. Because this argument essentially duplicates the ADOC Defendants' argument that the complaint fails to state a plausible claim, the qualified immunity analysis described here applies equally to that argument.

immune not just from liability, but from suit, unless the conduct which is the basis for [the] suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999). "'[A]ll but the plainly incompetent or one who is knowingly violating the federal law'" are entitled to the protection of qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). Qualified immunity, however, "does not extend to one who knew or reasonably should have known that his or her actions would violate the plaintiff's federal rights." *Gaines v. Wardynski*, 871 F.3d 1203, 1207 (11th Cir. 2017).

As a threshold matter, a public official must have acted within the scope of her discretionary authority to invoke qualified immunity. *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017). Here, Ms. Keith does not contest that the ADOC Defendants were acting within the scope of their discretionary authority when they set and implemented the policies governing administrative segregation and mental health classification and treatment at Limestone prison. Accordingly, the court finds that the ADOC Defendants have satisfied the required threshold showing for their qualified immunity request, and that Ms. Keith bears the burden of showing "'that qualified immunity is not appropriate.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee*, 284 F.3d at 1194).

To make this showing, "[Ms. Keith] must demonstrate . . . the following two things: (1) that the defendant violated her constitutional rights, and (2) that, at the time of the violation, those rights were 'clearly established . . . in light of the specific context of the case, not as a broad general proposition.'" *Gaines*, 871 F.3d at 1208 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled, in part, on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)). The court "may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings." *Jones*, 857 F.3d at 851. Because the court finds that Ms. Keith's complaint fails to allege a constitutional violation under binding Eleventh Circuit precedent, it does not address whether Mr. Hammonds' constitutional rights were clearly established.[6]

---

[6]Although the primary thrust of the ADOC Defendants' argument focuses on whether Ms. Keith's complaint plausibly alleges a constitutional violation, they argue very briefly that the law with respect to their alleged actions in this case is not clearly established. The court disagrees. "Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). This obligation extends to the provision of psychiatric care to incarcerated individuals. *See Greason v. Kemp*, 891 F.2d 829, 834 (11th Cir. 1990) (holding that "providing an inmate with inadequate psychiatric care could violate the inmate's eighth amendment right"). Moreover, the Eleventh Circuit has "repeatedly found that 'an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate.'" *McElligott*, 182 F.3d at 1256 (citation omitted). Indeed, in the context of prisoner suicide cases a showing that a "jail official displayed 'deliberate indifference' to the prisoner's taking of his own life'" violates the Eighth and the Fourteenth Amendments. *See, e.g.*, *Cook*, 402 F.3d at 1115 (citation omitted).

*a. The complaint fails to plausibly allege that the ADOC Defendants violated the constitution*

Before discussing liability in a § 1983 suit "it is necessary to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S 137, 140 (1979). This is a prisoner suicide case alleging the violation of Mr. Hammonds' constitutional rights secured via the Eighth and Fourteenth Amendments and accordingly "'[Ms. Keith] must show that the jail official displayed *deliberate indifference* to [Mr. Hammonds'] taking of his own life.'" *Jackson*, 787 F.3d at 1353 (citation omitted).

Moreover, where, as here, the plaintiff uses § 1983 to assert constitutional tort claims against supervisory officials, it is well settled that principles of *respondeat superior* or vicarious liability do not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Instead, supervisory liability arises only when "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* Among other methods, a causal connection may be "established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). The requisite causal connection may also be established when "'a history of widespread abuse puts the

responsible supervisor on notice of the need to correct the alleged deprivation, and [she] fails to do so.'" *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (quoting *Cottone*, 326 F.3d at 1360). The widespread abuse necessary to "notify the supervising official [of the need for corrective action] must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). In this circuit "'[t]he standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous.'" *Gonzalez*, 325 F.3d at 1234 (quoting *Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)).

Here, the ADOC Defendants primarily argue that Ms. Keith has failed to allege, as she must, a causal connection between their actions and Mr. Hammonds' suicide. A review of the complaint shows that it alleges that the ADOC Defendants were indifferent toward a broad class of inmates, those with mental-health issues, and that, as part of that class, Mr. Hammonds individually suffered constitutional harm. *See* Doc. 1 at 8–10. However, in the Eleventh Circuit, indifference to a class of suicidal inmates does not subject an official to supervisory liability for the suicide of a particular class member. *See Cook*, 402 F.3d at 1117 (holding that even a finding that an official was deliberately indifferent "toward suicidal inmates in general" is insufficient to impose § 1983

liability for the failure to prevent a particular suicide). Instead, the named defendants must have had "'subjective knowledge of a risk of serious harm' . . . '[to] *the* individual whose rights are at issue in order to be held liable for the suicide of that individual.'" *Cook*, 402 F.3d at 1116–17 (citations omitted). The court will address Ms. Keith's claims for supervisory liability against each named ADOC Defendant in turn.

### i. *ADOC Defendant Gordy is entitled to qualified immunity*

With respect to the claims against Gordy, the Warden of Limestone prison, the complaint alleges that Gordy knew that Limestone's segregation cells were not suicide proof, and, more broadly, that he was aware of the rising suicide rate among inmates in ADOC custody. Doc. 1 at 18–19. However, with regard to Gordy's alleged failure to provide safe segregation cells for mentally ill inmates, "the mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Tittle*, 10 F.3d at 1540. Similarly, Gordy's awareness of the systemic inadequacy of the ADOC's mental health policies does not translate into actual knowledge of the specific risk of harm Mr. Hammonds was exposed to at Limestone. Instead, the "defendant [must have been] deliberately indifferent to an individual's mental condition and the likely consequences of that condition." *Tittle*, 10 F.3d at 1539. For that reason, the Eleventh Circuit has repeatedly found that "[a]bsent knowledge of a detainee's

suicidal tendencies, the cases have consistently held that failure to prevent suicide . . . [does not] constitute deliberate indifference." *Popham*, 908 F.2d at 1564. "Deliberate indifference requires more than constructive knowledge." *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013).

The complaint simply does not allege that Gordy had any direct involvement with Mr. Hammonds or was otherwise aware that Mr. Hammonds was a suicide risk. Indeed, the court lacks a basis to conclude that Gordy even knew that Mr. Hammond was incarcerated at Limestone let alone that Gordy had sufficient knowledge of Mr. Hammonds' mental health issues to infer that Mr. Hammonds' placement in administrative segregation created "'a strong likelihood, rather than a mere possibility'" of suicide. *Tittle*, 10 F.3d at 1540 (citation omitted). In the absence of any allegations establishing Gordy's subjective awareness of the suicide risk posed by placing Mr. Hammonds in administrative segregation, the court concludes that Gordy's conduct did not violate the constitution and that he is entitled to qualified immunity.

### ii. ADOC Defendant Naglich is entitled to qualified immunity

Ms. Keith's supervisory liability claim against Ruth Naglich, the Associate Commissioner of Health Services for the ADOC, presents a more difficult question. Naglich was responsible for, among other things, "supervising the provision of adequate mental health care for prisoners in ADOC custody." Doc. 1

at 20. As part of these responsibilities, Naglich supervised the MHM staff members providing psychiatric care to inmates, including those inmates classified as suicide risks. *Id.* at 20–21. The complaint also alleges the existence of serious deficiencies in the ADOC's treatment of mentally ill prisoners including the failure to: (1) identify and properly treat inmates with serious mental illnesses; (2) properly evaluate inmates being released from suicide watch; (3) provide necessary follow-up care to inmates after they are released from suicide watch; and (4) provide mentally ill inmates placed in segregation with appropriate treatment or with safe cell conditions. *Id.* at 8–10, 21–24. The complaint further avers that Naglich was aware of these systemic issues, but failed to take any corrective action to alleviate the risk of serious harm her policies imposed on suicidal inmates. *Id.* at 19–24.

As damning as these allegations are, they are inadequate, under Eleventh Circuit precedent, to establish that Naglich was deliberately indifferent toward Mr. Hammonds. As discussed above, "[d]eliberate indifference, in the jail suicide context, is not a question of the defendant's indifference to suicidal inmates or suicide indicators generally, but rather it 'is a question of whether a defendant was deliberately indifferent to *an individual's* mental condition and the likely consequences of that condition.'" *Cook*, 402 F.3d at 1117 (quoting *Tittle*, 10 F.3d at 1539). In other words, "the defendant must have had 'notice of the suicidal

tendency of *the* individual whose rights are at issue in order to be held liable for the suicide of that individual.'" *Id.* (quoting *Tittle*, 10 F.3d at 1539). As the Eleventh Circuit explained in *Cook*, indifference toward a class of suicidal inmates is not enough to demonstrate the foreseeability of a particular individual's suicide, and it is the latter question that is dispositive in the context of a suit against an individual for money damages under § 1983. *Id.* at 1116 (explaining that because there is no *respondeat superior* under § 1983 the defendant herself must have had "subjective knowledge of a risk of serious harm").

Ms. Keith has not alleged that Naglich had subjective knowledge of Mr. Hammonds' mental condition such that she subjectively knew he was ever exposed to a risk of serious harm. To establish that an official was deliberately indifferent to a risk of harm, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists . . . *he must also draw the inference*." *Goodman*, 718 F.3d at 1332 (quotation omitted). Just as with Gordy, the complaint fails to plausibly establish that Naglich was subjectively aware of the suicide risk posed by Mr. Hammonds. Accordingly the court concludes that Naglich's conduct, as reprehensible as it purportedly was, did not violate the Constitution, at least with regard to Mr. Hammonds' suicide, and that she is also entitled to qualified immunity.

## 2. *The Court Declines Supplemental Jurisdiction Over Ms. Keith's State Law Claims Against the ADOC Defendants*

The ADOC Defendants also argue that Ms. Keith's wrongful death claims brought against them pursuant to ALA. CODE § 6-5-410 are due to be dismissed based on State Agent Immunity. The court need not address this argument because, for the same reasons discussed above, *see supra* pp. 14–15, the court declines to exercise supplemental jurisdiction over Ms. Keith's state law negligence claims asserted against the ADOC Defendants pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, these claims are also dismissed without prejudice.

## IV.    CONCLUSION AND ORDER

For the reasons outlined above, the Defendants' twin motions to dismiss, docs. 7 and 17, are **GRANTED**. Accordingly, all of Ms. Keith's claims are **DISMISSED WITHOUT PREJUDICE**.

**DONE** the 23rd day of January, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE